IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EDWARD SHLIKAS          *
                        *
v.                      *     Civil Action No. WMN-13-1808
                        *
TIAA-CREF               *
                        *
                        *
   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

**MEMORANDUM**

Before the Court is Defendant TIAA-CREF Individual and Institutional Services, LLC's Motion to Dismiss. ECF No. 8. The Motion is fully briefed and is ripe for review. For the reasons stated herein, the Court determines that no hearing is necessary, Local Rule 105.6, and the Motion to Dismiss will be granted.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Edward Shlikas is a participant in his employer's 403(b) Defined Contribution Plan. Under this Plan, Plaintiff had the opportunity to invest his savings in a number of different funds. On April 29, 2013, Plaintiff transferred $73,772.85 ("the Subject Funds") from his CREF Equity Index Fund into the TIAA Traditional Annuity. Prior to doing so, Plaintiff called TIAA-CREF "and was told and was left with the impression that [he] could freely move money between TIAA-CREF Funds at will, without restriction, at any time." Compl. ¶ 7.

1

The CREF Equity Index Fund is a variable annuity, "in which the value of Plaintiff's investment 'changes over time reflecting the investment experience (dividend and interest income, plus capital gains and losses) and expenses of the account.'"[1]  ECF No. 8-1 at 4 (quoting ECF No. 8-5).  The Traditional Annuity, by contrast, is a low-risk fund, and guarantees that investments will grow "at an assured interest rate, irrespective of market performance, which will accrue to Plaintiff's benefit in the form of lifetime retirement income."  ECF No. 8-1 at 2.  The Traditional Annuity contains strict transfer restrictions, however.  Specifically, the TIAA Annuity Certificate states that "[y]ou can transfer your Traditional Annuity accumulation to your companion CREF certificate or to the Investment Accounts over a 10-year period.  You cannot withdraw or transfer your Traditional Annuity accumulation in a lump sum."  ECF No. 8-2.  Additionally, the plan Enrollment Form, which was signed by Plaintiff, states in relevant part:

> The TIAA annuity contract does not allow lump-sum cash withdrawals from the TIAA Traditional Annuity and transfers must be spread over a ten-year period.

---

[1] Shlikas did not attach the annuity contract documents to his Complaint.  Nonetheless, the Court may consider them, as they were (1) attached to Defendant's Motion to Dismiss, and were clearly integral to and relied upon in Shlikas's Complaint, and (2) Shlikas does not contest their authenticity.  Blankenship v. Machin, 471 F.3d 523, 526 n.1 (4th Cir. 2006) (citing Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004)).

2

> Transfers from the TIAA Real Estate Account and from all CREF accounts may be made in a lump sum.

ECF No. 8-3 at 2.

On May 1, two days after making the initial transfer, Plaintiff sought to make a lump sum transfer of the Subject Funds back into his CREF Equity Index Fund, but was unable to do so.[2] Plaintiff called Defendant TIAA-CREF and spoke to an employee, who informed Plaintiff that he could not move the Subject Funds from the Traditional Annuity into the CREF Equity Index Fund. According to the CREF Annuity Certificate, Plaintiff was not permitted to revoke his transfer after its effective date, which is "the end of the Business Day in which CREF receives" the request. ECF No. 8-4 at 16. Thus, Plaintiff's transfer was complete, and irrevocable under the terms of the CREF Equity Index Fund, at the close of business on April 29. Plaintiff asserts that, prior to making the initial transfer from his CREF Equity Index Fund to the Traditional Annuity, he was not aware of the Traditional Annuity's ten-year lump sum transfer restriction.

---

[2] Plaintiff alleges that he also, on April 29, transferred funds out of two other CREF accounts into the TIAA Traditional Annuity. Plaintiff successfully transferred the funds back into these two CREF accounts on May 1. See Compl. ¶¶ 1-2, 4. Defendant does not explain why those funds were able to be transferred out of the Traditional Annuity in a lump sum, while the Subject Funds were not.

Plaintiff, proceeding pro se, filed a Complaint in the District Court for Baltimore County, which was subsequently removed to this Court by Defendant. Plaintiff's Complaint appears to allege state law claims for breach of contract and negligent misrepresentation, and seeks specific performance and/or compensatory damages. On June 27, Defendant filed the present Motion to Dismiss, contending that Plaintiff's claims are preempted by ERISA and that, even if Plaintiff's Complaint could be construed as asserting an ERISA claim, Defendant complied with the terms of Plaintiff's Annuity.

II. **LEGAL STANDARD**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint. Edwards v. City of Goldsboro, 178 F.3d 232, 243 (4th Cir. 1999). To survive a 12(b)(6) challenge, a complaint need only present enough factual content to render its claims "plausible on [their] face" and enable the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A plaintiff filing pro se, like Shlikas, is held to a "less stringent standard" than a lawyer, and the court must construe his or her claims liberally, no matter how "inartfully" pled. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Even a pro se complaint must, however, meet a

4

minimum threshold of plausibility. See, e.g., O'Neil v. Ponzi, 394 F. App'x 795, 796 (2d Cir. 2010).

### III. ANALYSIS

#### A. ERISA Preemption

Defendant first alleges that Plaintiff's state law claims are completely preempted by the Employee Retirement Income Security Act ("ERISA"). ERISA governs and otherwise regulates "employee benefit plans." See 29 U.S.C. §§ 1001, 1002(3). In drafting ERISA, Congress expressed an intent that "'the civil enforcement provisions of ERISA § 502(a) be the exclusive vehicle for actions by ERISA-plan participants and beneficiaries . . ., and that varying State causes of action for claims within the scope of § 502(a) would pose an obstacle to the purposes and objective of Congress.'" Singh v. Prudential Health Care Plan, Inc., 335 F.3d 278, 289-90 (4th Cir. 2003) (quoting Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 52 (1987)). Thus, a plaintiff's state law claim is completely preempted if it falls within the scope of § 502(a). See Miller v. U.S. Foodservice, Inc., 323 F. Supp. 2d 665, 667 (D. Md. 2004).

Section 502(a) "authorizes participants or beneficiaries to file civil actions to, among other things, recover benefits, enforce rights conferred by an ERISA plan, remedy breaches of fiduciary duty, clarify rights to benefits, and enjoin violations of ERISA." Marks v. Watters, 322 F.3d 316, 323 (4th

5

Cir. 2003). See 29 U.S.C. § 1132(a)(1)(B). If a state law complaint falls within the scope of § 502(a), and is thus completely preempted, it is converted into "a federal claim for purposes of the well-pleaded complaint rule." Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 65-66 (1987). "[T]o the extent that state-law claims seek remedies that fall outside the scope of § 502(a), [however,] they are rejected as preempted." Singh, 335 F.3d at 290 (citing Marks, 322 F.3d at 323). In determining whether a state law claim is completely preempted by ERISA, the Fourth Circuit considers whether (1) the plaintiff has standing under § 502(a), (2) the claim is within the scope of § 502(a), and (3) the claim is not capable of resolution without interpretation of the ERISA plan. Sunoco Prods. Co. v. Physicians Health Plan, Inc., 338 F.3d 366, 372 (4th Cir. 2003).

Plaintiff's claims are completely preempted by ERISA. First, there is no dispute that Plaintiff has standing to bring a claim pursuant to § 502(a) because he is a "participant or beneficiary" of his employer-sponsored retirement plan. See 29 U.S.C. § 1132(a)(1)(B); see generally Compl. at Ex. B.

Second, Plaintiff's claims may be properly construed as within the scope of § 502(a). Here, Plaintiff seeks to "enforce his rights under the plan (e.g., his alleged right to receive certain notices) or, alternatively, to remedy an alleged breach of fiduciary duty (e.g., to provide adequate disclosures)."

6

Reply at 4. Specifically, he contends that Defendant failed to provide him with adequate notice of the consequences of transfer to the Traditional Annuity, and breached its agreement with him when it refused subsequently to transfer the money back into the CREF Equity Index Fund. Courts have routinely interpreted claims sounding in the wrongful denial of ERISA rights or benefits and breach of fiduciary duty as enforceable through § 502(a). See, e.g., Singh, 335 F.3d at 290-92; Ankney v. Metropolitan Life Ins. Co., 438 F. Supp. 2d 566, 572-73 (D. Md. 2006). Further, Plaintiff admits that his claims "may also be characterized as federal causes of actions under ERISA," because he seeks "to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."[3] ECF No. 12 at 13-14 (quoting 29 U.S.C. § 1132(a)).

Last, because Plaintiff asserts that Defendant violated its duties under the ERISA plan, Plaintiff's claims are not capable of resolution without interpretation of those documents. Therefore, Plaintiff's state law claims are completely preempted by ERISA. That ERISA completely preempts Plaintiff's state law claims does not mean, however, that Plaintiff's Complaint must

---

[3] To the extent that Plaintiff seeks a remedy outside of the scope of § 502(a), Plaintiff's claims must be rejected as preempted, and will not convert to a federal claim under ERISA. See, e.g., Pilot Life, 481 U.S. at 52.

7

be dismissed.  Rather, his state law claims are properly converted into federal ERISA claims arising under § 502(a). See, e.g., Termini, 464 F. Supp. 2d at 517-18.

### B. Claim for Relief Under § 502(a)

Defendant asserts that, even if Plaintiff's claims may be construed as federal claims under § 502(a), the Complaint should be dismissed because Plaintiff fails to state a plausible claim for relief.  Specifically, Defendant argues that its actions forming the basis of Plaintiff's Complaint were in compliance with the written terms of the Traditional Annuity contract and signed Enrollment Form.

To state a plausible claim for relief under § 502(a), a Plaintiff must allege a right to recovery under the terms of his or her ERISA plan.  See Pilot Life, 481 U.S. at 53 (noting that under § 502(a), "a plan participant or beneficiary may sue to recover benefits due under the plan, to enforce the participant's rights under the plan, or to clarify rights to future benefits" (emphasis added)).  In interpreting the rights and benefits due under an ERISA benefit plan, "courts must enforce and follow 'the plan's plain language in its ordinary sense.'"[4]  Blackshear v. Reliance Standard Life Ins. Co., 509

---

[4] Plaintiff asserts in his Opposition that he never received the contract documents governing his ERISA plan.  Nothing in his Complaint, however, can be construed to assert that Defendant failed to comply with ERISA notification provisions by failing

8

F.3d 634, 639 (4th Cir. 2007), abrogated on other grounds by Williams v. Metro. Life Ins. Co., 609 F.3d 622, 630 (4th Cir. 2010). "As a matter of statutory policy, ERISA places great weight on the written terms of the formal plan documents," and specifically "prohibits informal written or oral amendments . . ." Gable v. Sweetheart Cup Co., 35 F.3d 851, 857 (4th Cir. 1994); 29 U.S.C. § 1102(b)(3).

Courts have routinely held that inaccurate oral representations may not alter the terms of an ERISA plan. See, e.g., Gable v. Sweetheart Cup Co., 35 F.3d 851 (4th Cir. 1994); Alday v. Container Corp. of Am., 906 F.2d 660, 665-66 (11th Cir. 1990). Moreover, to the extent that Plaintiff seeks equitable relief to prevent the enforcement of the plan provisions contrary to the employee's alleged misrepresentation, a party may not generally "seek to estop the application of an unambiguous provision in an ERISA plan." Marks v. NewCourt Credit Group, Inc., 342 F.3d 444, 456 (6th Cir. 2003). This is because, "'to allow estoppel to override the clear terms of plan documents would be to enforce something other than the plan documents themselves.'" Id. (quoting Sprague v. Gen. Motors Corp., 133 F.3d 388, 403 (6th Cir. 1998) (en banc)).

---

to provide Plaintiff with contract documents at the time the contract was signed. Rather, the thrust of Plaintiff's claim is that Defendant had an obligation to re-notify him regarding the relevant contractual terms at the time he made the transfer of the Subject Funds.

9

Here, the terms of the Traditional Annuity and the Enrollment Form, which Plaintiff signed, expressly contradict Plaintiff's asserted right to make a lump-sum transfer. Plaintiff points to no plan provision supporting his asserted right to compel Defendant to transfer the Subject Funds into the CREF Equity Index Fund. Plaintiff asserts that he relied on an incorrect oral representation of an employee of the Defendant which led him to believe he could transfer his money into, and out of, the Traditional Annuity without restriction. Notably, however, Plaintiff does not assert that his plan expressly permits him to do so.[5] Because ERISA plans are construed in accordance with their unambiguous provisions, and oral representations may not alter the terms of a written ERISA plan, Plaintiff has not stated a plausible claim for relief.

Alternatively, Plaintiff contends that, notwithstanding the Plan's inclusion of the express transfer restriction, he did not know or could not be expected to remember the applicable provisions of his plan. Instead, he argues that Defendant breached its fiduciary duty to him by failing to re-notify him, at the time of the transfer, of the Traditional Annuity's transfer restrictions.

---

[5] Plaintiff does not contradict Defendant's assertion that the relevant contracts contained the transfer restriction at issue.

Before determining that a fiduciary duty has been violated, an individual ordinarily must first establish "that the party charged with the breach meets the statutory definition of 'fiduciary.'" Coleman v. Nationwide Life Ins. Co., 969 F.2d 54, 60-61 (4th Cir. 1992). Here, Plaintiff did not allege specifically in his Complaint that Defendant was acting in a fiduciary capacity when it permitted him to transfer the Subject Funds into the Traditional Annuity.[6] Even if he did, however, Plaintiff points to no provision in the plan documents imposing a duty on the Defendant to re-notify him of the transfer restrictions. Rather, his Complaint alleges notifications that he thinks Defendant either should have or could have provided, without asserting any basis, in the ERISA statute or plan documents, for imposing legal liability on Defendant for failing to do so. See, e.g., Coleman, 969 F.2d at 61-62. Therefore, even assuming that all of the factual allegations in Plaintiff's Complaint are true, the plain language of ERISA and the

---

[6] Plaintiff argues, in his Opposition, that Defendant has a fiduciary duty to invest his money solely in his best interest. He contends that Defendant's actions, in refusing to transfer his money in a lump-sum payment out of the Traditional Annuity, violate that fiduciary duty. See ECF No. 12 at 8-9. To the extent that Defendant owes such a fiduciary duty to the Plaintiff, however, it does not extend to those decisions which are expressly Plaintiff's under the terms of the Plan. See ECF No. 8-2 ("TIAA will allocate your premium according to the most recent valid instructions we have received from you in a form acceptable to TIAA.").

contracts governing Plaintiff's ERISA Plan do not permit Plaintiff the relief that he seeks under § 502(a).

**IV. CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss will be granted.

                                                /s/
                              William M. Nickerson
                              Senior United States District Judge

DATED: October 31, 2013